**AFFORDABLE COUNTRY HOMES, LLC, Plaintiff–Appellant,**

v.

**Rod SMITH and Kevin Bunnell, d/b/a Bunnell Real Estate Services, Defendants–Appellees.**

**No. 06CA2222.**

Colorado Court of Appeals, Div. II.

Sept. 4, 2008.

§ 24–51–1105, C.R.S.2007.

The Schmehl Law Group, P.C., James W. Schmehl, Fort Collins, Colorado, for Plaintiff–Appellant.

Frascona, Joiner, Goodman and Greenstein, P.C., Cinthia M. Manzano, Boulder, Colorado, for Defendants–Appellees.

Opinion by Judge CARPARELLI.

Plaintiff, Affordable Country Homes, LLC (ACH), appeals the district court's order denying its motion, under C.R.C.P. 60(b), to reform a settlement agreement with defendants, Rod Smith and Kevin Bunnell. We affirm.

## I. Settlement of the Underlying Case

ACH sued defendants alleging, among other things, breach of contract and fraud. After trial had begun, the parties informed the court that they had agreed to settle and stated the terms of the settlement on the record. The court entered a minute order stating that the terms of the agreement would be reduced to writing and become an order of the court. Thereafter, the parties submitted a stipulation for dismissal in which they confirmed that their agreement had been reduced to writing and was attached for the purpose of becoming an order of the court.

Among other things, the settlement agreement required defendants to transfer three properties to ACH, the legal descriptions of which were attached and referenced in the agreement. The parties agreed, "for the purposes of this [a]greement," that the properties had a combined value of $150,000. In addition, the agreement stated that

- each party had "independently ascertained, verified, and weighed all of the facts and circumstances likely to influence his judgment,"
- the parties "expressly assume any and all risks that the facts and law may be, or become, different from the facts and law as known to, or believed to be by any of the parties as of the date of this [a]greement,"
- the parties had not relied on "any obligation or alleged obligation of any other

party or its counsel to disclose information relevant to this [a]greement,"

- the negotiations were merged into the agreement and there were "no representations, covenants, warranties, understandings or agreements, oral or otherwise, in relation thereto between the parties, other than those incorporated herein and delivered hereunder."

The parties asked the court to dismiss all claims with prejudice with each party to bear its own fees and costs. The parties did not further request that the court incorporate the attached agreement as part of its order or retain jurisdiction over disputes that might arise in the course of executing the agreement.

The order granting the stipulation for dismissal is dated December 21, 2005, and states: "All claims by and between, Affordable Country Homes and Rod Smith and Kevin Bunnell, d/b/a Bunnell Real Estate Services are hereby dismissed with prejudice, with each party to bear its own costs and fees." There is no reference to the settlement agreement.

## II. ACH's Motion to Reform the Settlement Agreement

About two months later, ACH filed the motion at issue here, which it captioned as a motion to reform the settlement agreement. The motion included forty-three allegations of fact regarding the negotiation of the settlement agreement and communications between the parties in January 2006, after the judgment of dismissal had entered. Among other things, ACH alleged that it had relied on misrepresentations of defendants and on defendants' obligation to disclose all material facts concerning the three lots in the settlement negotiations.

The motion stated that it was filed pursuant to C.R.C.P. 60(b)(2) and (b)(5). However, ACH did not seek relief from the judgment dismissing its claims. Instead, it asked the court to:

- Reform the settlement agreement by striking provisions that required defendants to convey the three properties;

- Reform the agreement by striking a provision that prohibited ACH from filing real estate commission complaints against defendants based on claims and demands settled and released in the agreement;

- Enter judgment requiring defendants to pay ACH $150,000, apparently in lieu of conveying the described property;

- Award ACH $375,000 in exemplary damages, which was the gross amount of the settlement agreement;

- Award ACH its reasonable attorney fees and costs "for the entire action";

- Award ACH postjudgment interest accruing from the date the trial was suspended pending settlement;

- Grant such other and further relief as the court deemed appropriate.

After reviewing the motion and related submissions, including affidavits and exhibits, the court denied the motion. The court ruled that ACH was on constructive notice of the allegedly undisclosed information because it was contained in public records, could have been easily ascertained by ACH, and would have been investigated by a reasonable party in ACH's position before accepting the property in partial settlement of the claims.

## III. C.R.C.P. 60(b)

We requested supplemental briefs on the question of whether the court had authority to reform the settlement agreement under C.R.C.P. 60(b)(2) after it had dismissed the case with prejudice. *See Archuleta v. Gomez*, 140 P.3d 281, 283–84 (Colo.App.2006) ("Although neither party questioned the jurisdiction of the district court or the jurisdiction of this court to hear this appeal, jurisdiction is an issue that we may raise and resolve sua sponte."). We conclude that the court lacked authority to grant the relief ACH sought.

C.R.C.P. 60(b) permits courts to relieve a party or a party's legal representative from a final judgment, order, or proceeding. Among other reasons, a court may do so on the basis of fraud, misrepresentation, or other misconduct of an adverse party or any other reason justifying relief from the opera-

tion of the judgment. C.R.C.P. 60(b)(2), (5). The resolution of such a motion is committed to the trial court's sound discretion, and we will only reverse the court's order if we conclude it abused that discretion. *Sharma v. Vigil,* 967 P.2d 197, 199 (Colo.App.1998). An abuse of discretion is established only where the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *Wark v. McClellan,* 68 P.3d 574, 578 (Colo.App.2003).

C.R.C.P. 60(b)(2) is similar to its federal counterpart, Fed.R.Civ.P. 60(b)(3). Therefore, we find case law interpreting the federal rule to be persuasive when analyzing the Colorado rule. *Antolovich v. Brown Group Retail, Inc.,* 183 P.3d 582, 604 (Colo.App. 2007).

■ An order granting relief under C.R.C.P. 60(b)(2) is designed to restore the parties to the position they were in before the final judgment, as if the vacated judgment had not been entered. *See Bronisz v. Ashcroft,* 378 F.3d 632, 637 (7th Cir.2004) (effect of granting a motion under Fed. R.Civ.P. 60(b) is to vacate the previous judgment, thus reinstating the case and proceeding from that point); *McCall–Bey v. Franzen,* 777 F.2d 1178, 1186 (7th Cir.1985)(court has authority under Fed.R.Civ.P. 60(b) to restore a dismissed case to its docket to adjudicate the issues in that suit).

■ Thus, "Rule 60(b) is available ... only to set aside a prior order or judgment. It cannot be used to impose additional affirmative relief." *Adduono v. World Hockey Ass'n,* 824 F.2d 617, 620 (8th Cir.1987); *United States v. One Hundred Nineteen Thousand Nine Hundred Eighty Dollars,* 680 F.2d 106, 107 (11th Cir.1982)(same); *United States v. One (1) Douglas A–26B Aircraft,* 662 F.2d 1372, 1377–78 (11th Cir. 1981)("claims for affirmative relief beyond the reopening of a judgment cannot be adjudicated on a Rule 60(b) motion but must be asserted in a new and independent suit"); *Bishop v. United States,* 266 F.2d 657, 659 (5th Cir.1959)(same); 12 James Wm. Moore, *Moore's Federal Practice* § 60.25, at 60–85 (3d ed.1997)("a court may not use Rule 60 to grant affirmative relief in addition to the relief contained in the prior order or judgment"). By setting aside an order or judg-

ment, the court sets the stage for further proceedings in the case in which the order or judgment was entered. *See Broyles v. Fort Lyon Canal Co.,* 695 P.2d 1136, 1144 (Colo. 1985).

In *Bishop,* the trial court entered judgment in a condemnation case and awarded the titleholder of record $185,000 for the property. The government later filed a pleading styled as an "Amended and Supplemental Complaint," which alleged that the titleholder fraudulently obtained the property from the government while he was a government employee. The government alleged that the conveyance to the titleholder was void, that it was the rightful owner of the property, and that the titleholder was not entitled to the judgment. The titleholder argued that the only relief the court could grant was to set aside the judgment.

The trial court granted far-reaching relief, including rescission of the original deeds and an accounting related to the property. The Fifth Circuit Court of Appeals reversed, holding that the relief granted was not within the permissible scope of Fed.R.Civ.P. 60(b). The court reasoned that the judgment was final, that setting aside the judgment would have left the condemnation action open and unresolved, and that such affirmative relief was beyond the scope of that action. *Bishop,* 266 F.2d at 659.

In *Adduono,* hockey players and others sued the National Hockey League (NHL), the World Hockey Association (WHA), and others. The parties settled and entered into a stipulation of dismissal, and the court dismissed all claims and counterclaims with prejudice. Payments under the settlement agreement were conditioned on representations in the agreement and included payment of the plaintiffs' attorney fees.

The WHA filed a motion to reopen the matter under Fed.R.Civ.P. 60(b), alleging that the plaintiffs' attorney had knowingly misrepresented facts in the settlement agreement. The district court heard arguments, found that the attorney had knowingly misrepresented facts in the agreement, imposed a fine on the attorney, and awarded attorney fees to the NHL and WHA. The Eighth

Circuit Court of Appeals reversed and held that under Fed.R.Civ.P. 60(b), the district court was limited to setting aside its order of dismissal and did not have authority to impose sanctions or award attorney fees.

In *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 378–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the parties executed a stipulation of dismissal with prejudice and the court entered judgment dismissing all claims. There, as here, in a Rule 60(b) motion, the moving party was not seeking to merely reopen the dismissed lawsuit based on an alleged breach of the settlement agreement, but sought enforcement of the agreement itself. *See* Margaret Meriwether Cordray, *Settlement Agreements and the Supreme Court*, 48 Hastings L.J. 9, 56 n. 191 (1996). The Supreme Court concluded that after the district court entered final judgment, the movant's Fed.R.Civ.P. 60 motion did not invoke the court's limited authority to grant relief beyond setting aside the judgment of dismissal.

### IV.  Analysis

■ Here, ACH's motion did not ask the court to set aside the judgment of dismissal, to reinstate the claims stated in the complaint and resume litigation, or to enter judgment in its favor with regard to the original claims and allegations. Instead, ACH alleged new facts, asserted new claims, and asked the court to "reform" the settlement agreement, to "enter judgment" on its motion, to award it damages against defendants, apparently for fraudulent concealment of information regarding the property identified in the agreement, and to award ACH attorney fees it had incurred before and after the judgment entered. ACH's request that the court award it exemplary damages appears to be premised on defendants' alleged bad faith breach of the settlement agreement.

However, even if ACH had asked the court to set aside the judgment and to resume litigation, it could not have pursued its new claims without obtaining leave to amend the complaint. Similarly, when the court denied ACH's motion to reform the settlement agreement, ACH moved for reconsideration and again asked the court to modify the terms of the settlement agreement. It did not ask that the dismissal of its original claims be vacated and litigation resumed.

■ Contract reformation is an equitable remedy. When a court's jurisdiction has been properly invoked, the court may grant such relief if the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of the parties. *Poly Trucking, Inc. v. Concentra Health Servs. Inc.*, 93 P.3d 561, 563 (Colo. App.2004); *Boyles Bros. Drilling Co. v. Orion Indus., Ltd.*, 761 P.2d 278, 281 (Colo.App. 1988). Reformation is permissible when there was a mutual mistake or one party made a unilateral mistake and the other party engaged in fraud or inequitable conduct. *Boyles Bros. Drilling Co.*, 761 P.2d at 281.

However, the relief explicitly requested by ACH is not available under C.R.C.P. 60(b)(2) and we conclude the court lacked authority to grant such relief. We also conclude that ACH's request for "such other and further relief" cannot be construed as a request to set aside the judgment, to reinstate the complaint, and to resume the litigation because ACH

- captioned the motion as one to reform the settlement agreement,

- prayed to reform the settlement agreement by, among other things, striking a provision preventing administrative action based on the settled and released claims and demands,

- prayed for damages and exemplary damages,

- the absence of any analysis or argument regarding setting aside the judgment and resuming litigation of the original claims,

- stated that, ACH "would be within its rights to seek rescission of the [s]ettlement [a]greement rather than reformation," but that doing so would entail the cost of another trial, and

- never stated or suggested that, if the court denied the relief it explicitly requested, it wanted the judgment set aside and the litigation resumed.

To the extent that ACH argues that its motion was proper because the settlement agreement was incorporated into the order of dismissal, we are not persuaded. Assuming, without deciding, that the agreement was incorporated into the order of dismissal, the appropriate action would have been to file a motion to enforce compliance with the order and, perhaps, to seek sanctions for contempt. But here, ACH sought to reform the agreement, entry of judgment on its original claims, and damages based on its new factual allegations of fraud and bad faith breach of the settlement agreement. It did not seek to enforce the order.

Because ACH sought relief that was not available under C.R.C.P. 60, we conclude that the trial court lacked authority to grant that relief. Accordingly, we conclude that the court did not abuse its discretion when it denied ACH's motion to reform the settlement agreement. We express no opinion about whether ACH may initiate a separate action in accordance with C.R.C.P. 3 based on the same factual allegations.

## V. Attorney Fees and Costs

We deny Smith's and Bunnell's requests for attorney fees and costs on appeal.

Given the absence of specific Colorado authority and our reliance on federal cases, we conclude the appeal is not groundless and frivolous.

The order is affirmed.

Judge ROTHENBERG concurs.

Judge BERNARD specially concurs.

Judge BERNARD specially concurring.

I concur with the result reached by the majority that ACH was not entitled to post-judgment relief in this case under C.R.C.P. 60(b)(2). It is my view that most of the relief ACH requested was affirmative relief, unavailable under C.R.C.P. 60(b), which should have been brought in a separate claim. ACH's requests to reform the settlement agreement, to enter a cash judgment against Smith and Bunnell, and to award ACH exemplary damages were beyond the relief authorized by C.R.C.P. 60(b), and, therefore, beyond the trial court's reach here.

However, I respectfully disagree with the majority's conclusion that the trial court lacked authority to grant any of the relief requested in ACH's motion to reform the settlement agreement (the Motion to Reform). For reasons explained below, I would conclude that some of the relief ACH requested was expressly available under C.R.C.P. 60(b)(2), because ACH alleged that Smith, Bunnell, and their counsel had committed a fraud upon the court. However, I would conclude that the trial court did not abuse its discretion when it denied the Motion to Reform.

### I. Request for Alternative Relief in the Motion to Reform

Here, ACH's legal memorandum in support of the Motion to Reform alleged that:

[Smith and Bunnell's] actions in misrepresenting the consideration proposed for settlement [were] intended to prevent this action from going to a jury, and constitute[ ] a *fraud upon this Court* as well as a fraud upon [ACH].

This Court should discourage [Smith and Bunnell] from further *engaging in real estate fraud by concealment upon Colorado Courts,* Colorado Juries, Colorado litigants, and Colorado citizens. Given the actions of [Smith and Bunnell], as shown at Trial, this Court should *impose every sanction it is empowered to impose upon* [Smith and Bunnell]. . . .

[ACH] would be within its right to seek rescission of the Settlement Agreement rather than reformation of the Agreement. If [ACH] elected this remedy this Court and the citizens of Colorado would have to bear the cost of *another trial because of* [Smith and Bunnell's] *fraud.*

(Emphasis added.)

There are three factors in the Motion to Reform and the accompanying legal memorandum that convince me that ACH clearly raised a claim that imbued the trial court with the authority to resolve it: (1) ACH specifically cited C.R.C.P. 60(b)(2); (2) ACH alleged that Smith, Bunnell, and their coun-

sel had perpetrated a fraud upon the court; and (3) ACH requested "such other and further relief as this Court deems appropriate under the circumstances," and "every sanction it is empowered to impose upon [Smith and Bunnell]." I would further conclude that the combination of these three factors constituted a clearly sufficient request for the type of relief that is available under C.R.C.P. 60(b)(2): setting aside the dismissal and reinstating the case; vacating the settlement agreement; and returning the parties to the positions they occupied at the case's inception.

## II. Fraud upon the Court

Fraud has long been recognized as an exception to finality that justifies setting judgments aside. *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 244–45, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) ("From the beginning there has existed along side [rules of finality] a rule of equity to the effect that under certain circumstances, one of which is after-discovered fraud [upon the court], relief will be granted against judgments regardless [of when they were entered]."), *overruled on other grounds by Standard Oil Co. v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976). Federal courts have the inherent power to vacate judgments on proof of fraud. *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 380, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946) ("The inherent power of a federal court to investigate whether a judgment was obtained by fraud is beyond question."). It appears Colorado courts have similar power. *See Clemes v. Fox*, 25 Colo. 39, 45, 53 P. 225, 228 (1898) ("[A] court of equity would have jurisdiction, for good cause shown, and upon the grounds of fraud or mistake, to vacate at a subsequent term one of its own judgments.").

One of the grounds for obtaining relief under C.R.C.P. 60(b) is fraud:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for ... (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party....

Intrinsic fraud is "such that the alleged fraud pertains to an issue involved in the original action or where the acts constituting the fraud were or could have been litigated in the original action." *Southeastern Colorado Water Conservancy Dist. v. Cache Creek Mining Trust*, 854 P.2d 167, 176 (Colo.1993).

Extrinsic fraud has been defined as going to

the jurisdiction of the court, or constitut[ing] a fraud upon the law of the forum, or which operates to deprive the person against whom the judgment was rendered of an opportunity to defend the action when he has a meritorious defense. It is such as prevents the party complaining from making a full and fair defense.

*Id.* (quoting *Fahrenbruch v. People ex rel. Taber*, 169 Colo. 70, 76, 453 P.2d 601, 605 (1969)). Extrinsic fraud

corrupts the judicial power and serves to turn a court of law into an instrument of injustice. A fraud upon the court, as contemplated by Rule 60(b), is one which interferes with the judicial machinery itself.

*Id.* Examples of extrinsic fraud are "bribery or other corruption of the court or of a jury, or where an attorney is complicitous in perpetrating the fraud." *Id.* at 176 n. 11. "Fraud upon the court is closely aligned with, but somewhat narrower than, extrinsic fraud." *In re Marriage of Gance*, 36 P.3d 114, 118 (Colo.App.2001).

Extrinsic fraud and intrinsic fraud have different effects upon judgments:

When extrinsic fraud is shown to exist, the judgment may be collaterally attacked, for such fraud renders the judgment not merely irregular, but void. As such, the judgment has neither life nor incipience—as a nullity it may be attacked directly or collaterally at any time. Intrinsic frauds, however, cannot give rise to collateral attack, though they may create voidable judgments, be the basis of a successful direct appeal, or be the subject of a motion for relief from judgment under C.R.C.P. 60(b).

*In re Estate of Bonfils,* 190 Colo. 70, 75, 543 P.2d 701, 705 (1975) (citations omitted).

## III. Analysis

Fraud upon the court "interferes with the judicial machinery itself." *Southeastern Colorado Water Conservancy Dist.,* 854 P.2d at 176. Thus, fraud upon the court implicates interests that transcend those of the parties, because it calls into question the legitimacy of the court's judgment. *See Calderon v. Thompson,* 523 U.S. 538, 557, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) ("This ... is not a case of fraud upon the court, calling into question the very legitimacy of the judgment."); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir.1989) ("A 'fraud upon the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.").

Courts must have a prompt opportunity to act when the legitimacy of their judgments is called into question. *See Estate of Bonfils,* 190 Colo. at 75, 543 P.2d at 705 (judgments obtained by extrinsic fraud are void and may be attacked collaterally or directly at any time). Indeed, the Supreme Court has recognized that federal courts may assert their ancillary jurisdiction "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen,* 511 U.S. at 380, 114 S.Ct. 1673; *see also In re Hunter,* 66 F.3d 1002, 1005 (9th Cir.1995)("If [a party] had alleged fraud upon the court, the court could have asserted ancillary jurisdiction because that doctrine is available to a court to 'vindicate its authority, and effectuate its decrees.' " (quoting *Kokkonen,* 511 U.S. at 380, 114 S.Ct. 1673); *Valerio v. Boise Cascade Corp.,* 645 F.2d 699, 700 (9th Cir.1981)(district court "had jurisdiction over plaintiff's claims of fraud on the court in the earlier settlement").

In my view, the trial court had the authority to grant appropriate relief under C.R.C.P. 60(b)(2), and appropriately considered the information provided by both parties to reach a decision on the merits of the allegation of fraud upon the court. However, ACH's allegations were not supported by sufficient evidence to justify granting relief. I would, therefore, conclude that the trial court did not abuse its discretion in denying the Motion to Reform, because the record does not contain "clear, strong, and satisfactory proof" establishing fraud. *See Sharma v. Vigil,* 967 P.2d 197, 199 (Colo.App.1998); *see also Wark v. McClellan,* 68 P.3d 574, 578 (Colo.App. 2003) (an abuse of discretion is only established when the trial court's ruling is manifestly arbitrary, unreasonable, or unfair).

I would reach this conclusion because:

- The written agreement contained language stating that (1) the parties had independently verified and assessed facts likely to affect their judgment; (2) they assumed the risk that the facts were different from those known when the agreement was signed; and (3) there were no representations or warranties other than those listed.

- Twelve days elapsed between the date when the settlement agreement was reached and the date when the written agreement was signed, during which ACH could have required Smith and Bunnell to identify the properties in order to inspect them and investigate their condition by consulting records.

- There were factual disputes about what was said during the mid-trial settlement negotiations, and so it fell to the trial court to resolve those disputes, assess the credibility of witnesses, and weigh the evidence. *See Morris v. Askeland Enterprises, Inc.,* 17 P.3d 830, 831 (Colo. App.2000).

- ACH does not claim that the other conditions of the written agreement were unsatisfied.

Last, I concur with the majority's decision to deny Smith and Bunnell attorney fees under C.A.R. 38(d).